In the Matter of the Protest of VERNON SAVINGS AND LOAN ASSOCIATION to the Assessment of an Income Tax Deficiency for the Years 1971, 1972 and 1973.

No. 50334.

Supreme Court of Oklahoma.

June 13, 1978.

McBee & Benson, Frederick, McAfee, Taft, Mark, Bond, Rucks & Woodruff, by Richard G. Taft, Reid E. Robison, Oklahoma City, for appellant.

Donald B. Nevard, Gen. Counsel, Oklahoma Tax Commission, Oklahoma City, for appellee.

BERRY, Justice.

Vernon Savings and Loan Association [Vernon], a domesticated foreign corporation, was assessed a deficiency in its Oklahoma corporate income tax for the years 1971, 1972 and 1973. Vernon protested assessment of deficiency before Oklahoma Tax Commission [Commission]. Upon notice and hearing Commission denied the protest. Vernon appealed. Commission is appellee.

The facts are that for the years in question Vernon conducted business in Oklahoma under a certificate of authority first issued by Oklahoma Building and Loan Board in 1965. Vernon did business through its agent, the Jim Roberts Agency, Frederick, Oklahoma. Vernon is a Texas corporation; its principal place of business is in Texas.

For each year, 1971, 1972 and 1973, Vernon filed an Oklahoma return of income and paid the tax due, treating interest paid to depositors as a deduction from income. This procedure comported with treatment of interest paid for federal tax purposes.

Commission assessed a deficiency against Vernon for each year in question, on the theory that interest paid to depositors must be added to federal taxable income to arrive at Oklahoma taxable income. Commission relies upon 68 O.S.1971 § 2358 B. 4. which reads, in part:

"B. In addition to the adjustment required by subsection A. of this section, taxable income shall be further adjusted as follows:

* * * * * *

"4. In the case of savings and loan associations located in Oklahoma, there shall be added to taxable income the amount of any dividend or distribution of earnings to shareholders, members or certificate holders of such association deducted in arriving at taxable income for such taxable year."

In addition to the deficiency Commission assessed interest upon the unpaid tax at rate prescribed in Oklahoma tax statutes.

Vernon protested the assessment. Upon notice, hearing was had before Commission. Commission, upheld the assessment, relying upon our decision in *Chickasha Federal Savings and Loan Association v. Oklahoma Tax Commission,* Okl., 528 P.2d 1384, and Oklahoma Savings and Loan Code of 1970, 18 O.S.1971· § 381.1 et seq., and Art. IX § 44, Okla. Constitution.

In its order denying Vernon's protest Commission also assessed additional interest. Vernon paid the additional tax and interest, all in the amount of $20,576.09, and timely commenced its appeal. 68 O.S. 1971 § 225.

The sole issue presented on appeal is whether Vernon is required to consider interest paid upon deposits as an adjustment to federal taxable income to arrive at Oklahoma taxable income for the year in which interest is paid.

Crucial to determination of the case is Vernon's composition as a savings and loan association wholly owned by 63 stockholders. The parties have referred to Vernon as a capital stock association, and we will adopt the term for our discussion.

The capital stock association was not recognized under Oklahoma Savings and Loan Code of 1970, 18 O.S.1971 § 381.1 et seq.[1] Oklahoma statutes contemplate savings and loan associations composed of members whose membership is determined by their status as shareholders or depositors in the institution.

18 O.S.1971 § 381.2 defines a savings and loan association "member" as:

". . . the holder of a savings account of an association, and also includes the owner of real estate upon which the association holds a mortgage or deed of trust."

A "savings account" is:

". . . that part of the capital liability of an association which is credited to the holder thereof, with respect to which the association issues a certificate or passbook in the name of the holder." Ibid.

There are two kinds of savings accounts: The "savings deposit", a

". . . savings account in an association qualified to accept deposits or which becomes qualified, evidenced by a savings deposit passbook or savings deposit certificate",

and the "shares" or "share accounts" which are

". . . any savings account issued by an association in the form of installment shares, optional installment shares, full paid shares, prepaid shares, savings shares, or other shares by whatever name called, evidenced by passbook or certificate." Ibid.

Membership in the association is further defined in 18 O.S.1971 § 381.27:

"Every holder of a savings account of an association . . . shall be deemed a member of such association. A holder of a savings account shall be entitled to one vote for each One Hundred Dollars . . . of his savings account . ."

Members choose the board of directors, who choose officers of the association as authorized by by-laws or by directors. Directors determine rates of earnings of savings accounts, and qualifications and limitations on types of accounts which earn interest at a rate exceeding the regular rate. The parties have referred to this type of institution as a mutual association. Each

---

1. We note Oklahoma Savings and Loan Code has been revised. Effective July 1, 1979, Oklahoma Capital Stock Associations will be authorized. The recent revisions have no effect on the law applicable to this case.

person who places money in savings becomes a part owner, entitled to participate in annual meetings and special meetings of shareholders.

Vernon's depositors enjoy none of the privileges of ownership conferred on members of mutual associations. Status of depositors does not entitle them to vote at the annual meeting or to participate in ownership or management of the association. Rather Vernon's ownership is vested in 63 stockholders.

Stockholders participate in annual meetings, elect directors, and generally exercise powers of owners of the corporation.

Both parties cite our decision in *Chickasha Federal Savings and Loan Association v. Oklahoma Tax Commission,* supra, as support for their contentions.

In that case we determined validity of 68 O.S.1971 § 2358 B. 4. We said legislative intent to impose distinctions in the scheme of taxation between savings and loan associations and commercial banks was based on several valid distinctions between the two types of institutions.

We said banks are owned by stockholders who invest capital in the bank and control the bank's operation and dividends paid to those stockholders are not deductible in computing Oklahoma taxable income. We also mentioned that bank depositors are creditors of the bank, with no control over bank operations.

We contrasted the savings and loan association, noting savings and loans obtain their capital solely from depositors who have complete control over operation of the association.

We concluded that opinion by stating all savings and loans were subject to 68 O.S. 1971 § 2358 B. 4. However, we were dealing with mutual associations. According to the record Vernon is the only capital stock association doing business in Oklahoma, and was not a party to the *Chickasha Federal* case.

The record discloses Commission, after our decision in *Chickasha Federal,* simply began applying the statute to tax returns of all savings and loan associations in Oklahoma. No consideration was given to the question of distinction between Vernon, the capital stock association, and the mutual associations.

We think the distinction is controlling. The statute provides certain tax treatment be accorded ". . . any dividend or distribution of earnings to shareholders, members or certificate holders of such association . . ."

Our discussion in *Chickasha Federal* grounds on the premise that "All shareholders, certificate holders, savings accounts holders, and savings deposit holders in a savings and loan association are members of the association." *Chickasha Federal Savings and Loan Association v. Oklahoma Tax Commission,* supra, at p. 1386.

Under Oklahoma statutes, one becomes a member of a mutual association by complying with statutes and association by-laws regarding membership. The only way one can buy an interest in a mutual association is to become a savings account holder.

The situation is not similar when one desires to become a part owner in a capital stock association. In that case, one can only buy an ownership interest by purchasing capital stock.

Members of a mutual association are entitled to attend the annual meeting of the association, vote for directors, and participate in other management decisions. 18 O.S.1971 §§ 381.27, 381.28. Depositor members of capital stock associations, who are not stockholders, may attend the annual meeting but are not empowered to vote for directors or participate in management of the association. E. g.: Vernon's Tex.Ann. Civ.St. art. 852a § 3.06. Under Texas statute, the association may, in its by-laws, determine that only stockholders may vote. Testimony before Commission indicates Vernon has so defined voting rights.

On liquidation of a mutual association, members are entitled to participate in assets as general creditors [18 O.S.1971 § 381.-52] and are also entitled to share, pro rata, in remaining assets after retirement of all

liabilities. When a capital stock association is liquidated depositor members who are not stockholders have no right to participate in excess of assets over liabilities [E. g.: Vernon's Tex.Ann.Civ.St. art. 852a § 10.04], and full withdrawal value of savings accounts of such members are considered liabilities for purposes of liquidation. [Ibid.]

█ Distinction between members of mutual associations and non-stockholder depositors in capital stock associations is the enjoyment of an ownership interest in the association. It is that interest which forms justification for the 68 O.S.1971 § 2358 B. 4. tax treatment accorded dividends or distributions paid by a savings and loan association. *Chickasha Federal Savings and Loan Association v. Oklahoma Tax Commission,* supra.

█ Interest paid by Vernon to its non-stock owning depositors is in the nature of a business expense. As such, the interest is not a "distribution or dividend to shareholders" within contemplation of 68 O.S.1971 § 2358 B. 4.

█ Commission argues Vernon is subject to provisions of 68 O.S.1971 § 2358 B. 4. because of the directive contained in Art. IX § 44, Okla. Constitution:

"No foreign corporation shall be authorized to carry on in this State any business which a domestic corporation is prohibited from doing, or be relieved from compliance with any of the requirements made of a similar domestic corporation by the Constitution or laws of the State. Nothing in this article, however, shall restrict or limit the power of the Legislature to impose conditions under which foreign corporations may be licensed to do business in this State."

Commission's argument is because domestic savings and loan associations are subject to tax consequences of 68 O.S.1971, § 2358 B. 4., so must foreign savings and loan associations be subject to those same consequences. The position does not take into account the fact that Vernon enjoys an existence different from that of domestic savings and loans. The tax consequence

applies to distributions of earnings to part owners. Vernon does not attempt to deduct distributions of earnings to part owners, as the record reveals Vernon does not deduct dividends to stockholders from adjusted gross income to arrive at taxable income.

As we mentioned earlier, Vernon is the only capital stock association doing business in Oklahoma. The formation of capital stock associations is not authorized in Oklahoma. All Oklahoma associations are mutual associations. The very form of corporate existence Vernon suffers sets it apart from all domestic savings and loan associations.

According to the record, Vernon's operations in Oklahoma are circumscribed by several special limitations. Vernon may not use its own name, or its designation as a savings and loan, in Oklahoma; Vernon may do business only in Tillman County; no loans may be approved and issued in Oklahoma, but loan applications accepted in Oklahoma must be acted on in Texas; Vernon may not identify its Oklahoma office as a branch.

By contrast, Oklahoma savings and loans may use the appellation: "Savings and Loan"; they may do business from branch offices; and the branch offices may be identified as such. There is no indication in the statutes that Oklahoma associations must confine the business of approving and issuing loans to any one office.

Vernon is not exempt from operation of the statute because it is a foreign corporation. Vernon is exempt from operation of the statute because, by the very terms of Vernon's existence, the statute has no application to it.

The question of whether a capital stock association can be certified to do business in Oklahoma is not before us. The record contains a certificate in Vernon's favor issued by Oklahoma Building and Loan Board, and parties are bound by the certificate.

Commission erred in denying Vernon's protest to assessment of deficiency for the

years 1971, 1972 and 1973, and Commission must be reversed. Tax deficiency and interest paid thereon were erroneously assessed.

Reversed and remanded to Commission for appropriate disposition in accordance with views expressed herein. 68 O.S.1971 § 225.

All Justices concur.